IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| CARL ROSS, | * | |
|---|---|---|
| Plaintiff, | * | |
| v. | * | Civil Action No. JKB-18-2078 |
| WARDEN, | * | |
| Defendant. | * | |

\*\*\*
# MEMORANDUM OPINION

Self-represented Plaintiff Carl Ross, presently incarcerated at the Eastern Correctional Institution ("ECI") in Westover, Maryland, brings this civil action pursuant to 42 U.S.C. § 1983 against Defendant Ricky Foxwell, Warden of ECI. *See* ECF No. 1. Through the complaint filed on July 9, 2018, and supplemented on July 19, 2018, and September 10, 2018, Ross alleges that Defendant is imposing cruel and unusual punishment through excessively hot conditions within ECI in the spring and summer seasons. *Id.* As a result, Ross alleges that he has difficulty sleeping, dizzy spells, and heat rashes, that he cannot stop sweating, that his sweat has a horrible chemical smell, and that the air vents in his cell do not work. *Id.*; ECF No. 3; ECF No. 12. He seeks $1,500 for every summer month he is in inadequate conditions and to be transferred to a prison that has a "protected custody" tier. ECF No. 12, p. 2; ECF No. 3, p. 5.

On October 9, 2018, Defendant filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 13. His motion is supported by a memorandum of law (ECF No. 13-1) and several exhibits (collectively, the "Motion"). Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Ross that the failure to file a response in opposition to the Defendant's Motion could result in dismissal of his Complaint. ECF No. 14.

Ross filed a response on November 7, 2018. ECF No. 15. After review of the record, exhibits, and applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). Defendant's Motion shall be construed as a Motion for Summary Judgment and shall be denied without prejudice.

**Background**

Ross is a protective custody ("PC") inmate at ECI. ECF No. 13-2, ¶ 3.[1] He alleges that beginning in summer of 2017, ECI has provided inhumane conditions because of high temperatures within prisoner cells. ECF No. 3, p. 2. During the spring and summer months, Ross has had trouble sleeping due to the heat, and when he would sleep, he would "wake up in a pool of [his] own sweat with blurry doubled vision." *Id.* He also claims to suffer from heat rashes, sweat that smells, and dizzy spells as a result of the heat in his cell. ECF No. 3-1; ECF No. 12.

Walter Donoway is the Housing Unit Manager for Housing Unit 5 where Ross is housed. ECF No. 13-2, ¶ 1 (Donoway Declaration). Donoway states that "the institution provides cleaning supplies to inmates in PC who would like to clean their cells, on Saturday morning." *Id.* at ¶ 4. Weekly inspections of the tiers occur, and issues brought to the officers' attention are addressed at that time. *Id.* The windows are not to be blocked for security reasons but may be opened or closed by the inmate. *Id.* at ¶ 5.

Capt. Eric Kiser is an Administrative Captain assigned to ECI. ECF No. 13-3, ¶ 1. Kiser avers that the housing units, day rooms, and dining halls are not air-conditioned, but do have several industrial-sized fans for use during warm weather. ECF No. 13-3, ¶ 3. Additionally, inmates may purchase fans for themselves through the commissary. *Id.* Inmates who are in

---

[1] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

2

protective custody may leave their cells for recreation time multiple times a week. *Id.* at ¶ 4. Inmates have access to ice water all year within the housing unit day rooms, and water coolers are filled twice a day and contain ¼ ice and ¾ water. *Id.* at ¶ 5.

On June 5, 2017, Ross complained of the water quality and the heat in his cell. ECF No. 13-4, p. 2. Ross claimed, "it's so hot it's like I've been locked in a hot car." *Id.* Ross also stated that "the other night I woke up with blurry and double vision." *Id.* The medical unit advised Ross to report water concerns to officers, to remain hydrated, to purchase a fan during ordering time, and to inform officers "if he feels as though he is having a heat related illness." *Id.*

On July 30, 2017, Ross visited the medical unit to complain of "pins and needles in back," "rash on [his] arms," and a "bump on [his] back but it went away." *Id.*, p. 4. In an Administrative Remedy Procedure ("ARP") request filed July 11, 2017, Ross made correctional personnel aware of his concerns regarding the heat, stating,

> the heat in the cells of this place are increasingly unbearable. I have heat rashes, I can't stop sweating, I wake up with dizzy spells when I even manage to get sleep. Lt. Donaway and Ms. Gragg wont [sic] do anything about this, stating it's 50 degrees and that I don't get special treatment . . . they need to fix the air. The vents don't work and the rest of the sources of air are hot air, causing a greenhouse effect in the cells. As if being locked in a turned off car.

ECF No. 3-1, p. 1. He further stated that "Ice does nothing to the air temperature nor does it fix our body temperature in this much heat." *Id.* at p. 2. The Institutional ARP Coordinator dismissed the ARP on July 19, 2017, for procedural reasons, stating "only one issue per form. Include dates, temps in your cell, medical reports documenting your dizzy spells. Be specific!" *Id.* at p. 1.

Ross filed another ARP on July 20, 2017, alleging,

> this started at the beginning of June . . . I do not have a temperature reading device because I am an inmate, but I do know it to be well over 95-100 or more degrees if I'm suffering this badly from it. Medical does not give documentation on my issues. The sick call complaints go to Melissa who then plays down the condition and sends me back to my cell. She stated she'd get my problems checked by a

doctor and I'm still waiting.

*Id.* at p. 3. Ross additionally stated that Melissa "said she didn't do anything about it because I needed to STILL be suffering from dizziness by the time she saw me." *Id.* at p. 4. This ARP was also dismissed for procedural reasons on July 25, 2017, in a statement noting that "you did not follow the directions of the ARC.[2]" *Id.* at p. 3.

On August 10, 2018, Ross filed another ARP, alleging that "the summer heat is turning all the cells (namely my cell) into a hotbox." ECF No. 15-1. He stated that the metal material of the windows draws heat in and is a health hazard that is causing him injury and that he believes he is going to die or suffer permanent injury that will incapacitate him. *Id.*

On August 18, 2018, Ross filed a sick call request for a bump on the right side of the back of his neck, along with "a horrible rash, heat blisters, etc." ECF No. 13-4, p. 9. In his request, he alleged that "the rash happened today out of nowhere," and "it's all sweat/heat related." *Id.* Under non-sick call related issues on the sick call request form, Ross claims that he's "written to the warden, all of this is caused by the heat conditions," "it seems to b [sic] goin [sic] away now" and that "it's gotten so bad I've got a civil suit." *Id.* The medical record for the August 18, 2018, visit, which is dated August 26, 2018, provides that "I/M stated, 'I've written the warden – all of this is caused by'" with no following language. *Id.* at p. 10.

On July 10, 2019, the Court received correspondence from Ross claiming that he is still suffering from heat conditions despite the fan he has purchased. ECF No. 17, p. 1. He states that he is still experiencing "sweating, prostration, and bacteria related symptoms on [his] skin, especially because [he is] not able to stop sweating, and the pungent odor coming from the sweat of [his] neck area." *Id.*

---

2 ARC stands for Administrative Remedy Coordinator.

## Legal Standard

Defendant has moved to dismiss the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment. Motions styled in this manner implicate the Court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 88 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, Civ. No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the

trier of fact to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## Analysis

In his Motion, Defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. ECF No. 13-1. In support, Defendant argues that (1) Ross does not state a cause of action that would entitle him to relief under § 1983 and (2) there were no unconstitutional conditions of confinement. *Id.*

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). In cases involving unconstitutional conditions, the Court must determine if they are conditions that "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements — that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind."

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at

6

298-99. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of "a serious or significant physical or emotional injury resulting from the challenged conditions." *See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634).

## I. Conditions

In his unverified supplement to the Complaint, Ross states that "the cells are like living in a (broken) car or greenhouse with a small open window as far as temperature." ECF No. 3, p. 1. In his unverified response to Defendant's Motion, Ross states that "they tell you about industrial fans OUTSIDE of the cells where none of the air can reach the cells because air cant [sic] travel through hundreds of pounds of metal that makes up the solid sliding-doors of our cells." ECF No. 15, p. 1, ¶ 3. Ross further avers that the heat causes him to

7

> lose consciousness on and off, not being able to sleep, rashes and blisters from not being able to stop sweating, blurred and double vision, causing puddles of sweat so extreme it spills into the lower bunk on other inmates . . . , and really painful pins and needles feeling on my back and arms.

*Id.*, ¶ 7. Ross states that cleaning the vents as a means of heat mitigation is moot as the vents do not work and blow out no air regardless of cleaning. *Id.*, ¶ 12. Ross purchased an 8-inch plastic fan but provides that it only blows hot air around and does not reach him on the top bunk due to the shortened cord of the fan. *Id.*, ¶ 13. He was additionally denied an extension cord for the fan. *Id.*

Defendant, on the other hand, has not provided any information about the conditions *in Ross's cell* during the timeframe in which he complains of excessive heat. Ross alleges that the temperature in the cell exceeded 100 degrees. *Id.*, ¶ 6. However, there is nothing in the record to dispute or verify that information.

Defendant points to the Declarations of Lt. Donoway and Capt. Kiser to demonstrate that the conditions within Ross's cell were acceptable. However, these declarations speak only to the conditions *outside* Ross's cell, noting that there are industrial fans in the common areas in warm weather, that there is ice water available in the common areas year-round, and that inmates receive an extra cup of water when temperatures exceed 100 degrees. ECF No. 13-3, p. 1-2. The only information Defendant provides regarding Ross's cell is that his window can be opened and that there is an air vent within his cell that is cleaned with a high-powered vacuum. ECF No. 13-2, pp. 1-2. This does not address Ross's claim regarding the actual conditions in his cell throughout the summer months.

Thus, the Court concludes that a genuine dispute of material fact exists as to the temperature conditions within Ross's cell and whether they were inhumane. As such, the Court cannot determine as a matter of law whether the Warden exhibited a sufficiently culpable state of

8

mind. Defendant's Motion, construed as a Motion for Summary Judgment, shall be denied, and Defendant will be directed to file a responsive pleading with adequate supporting materials.

**II.      Medical Records**

Ross also alleges in his unverified Complaint that ECI has "outright refused to fix the cell vents," his sweat has a chemical smell, he feels pins and needles on the back of his neck, he cannot stop sweating, he has dizzy spells, and he cannot sleep. ECF No. 1.; ECF No. 3; ECF No. 12.

In his Motion, Defendant avers that Ross's certified medical records from June 2017 to September 2018 show only one complaint about the heat, on June 28, 2017. ECF No. 13-1, p. 3. Based on the record before the Court, it does not appear that Ross visited the medical department on June 28, 2017; no medical record is dated as such and the citation provided by Defendant in support of his assertion corresponds to a medical visit on June 5, 2017. ECF No. 13-4, p. 2. Moreover, contrary to his assertion that Ross only complained about the heat once, the "select medical records" provided by Defendant include two additional visits to the medical department, on July 30, 2017, and August 18, 2018.[3] ECF No. 13-4, p. 4, pp. 9-10.

The complaint from July 30 states that Ross has had a rash since the middle of July. ECF No. 13-4, p. 4. Likewise, on August 18, 2018, Ross complained of a rash and heat blisters on a sick call slip, and stated, "I think it's all heat related." *Id.* at p. 9. The medical record for Ross's visit on August 18, 2018, was completed on August 26, 2018, and provided that "I/M stated, 'I've written the warden – all of this is caused by'" with no following language. *Id.* at p. 10. The omission of the cause in the medical record does not preclude this visit from being heat-related.

Based on the record presented to the Court, it is unclear whether Ross has experienced medical issues because of inhumane conditions at ECI and, therefore, a genuine dispute of material

---

[3] Other medical records were included in the record but are unrelated to this complaint.

fact exists as to whether Ross has experienced injury resulting from the conditions. As such, the Court cannot determine as a matter of law whether the Warden maintains unconstitutional conditions of confinement, precluding summary judgment in his favor. Accordingly, the Court will deny without prejudice Defendant's Motion and direct Defendant to file a responsive pleading with adequate supporting materials.

## Conclusion

Defendant's Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, shall be denied without prejudice. Defendant will be directed to file a responsive pleading with adequate supporting materials addressing the issues stated herein.

A separate Order follows.

August 9, 2019
Date

James K. Bredar
Chief Judge